Your Honor, I'm Phil Hantel. I represent Mr. Calvin Evanston. I don't know that I have all that much to add from what I've submitted in the briefs. The one thing that struck me when I was preparing is in comparing the cases that were cited by the government versus the cases that I cited relative to assignment of error number two, which is the additional closing argument error. I would just note that most of the cases that the government cites dealt with Rule 30 in the sense that there was an additional jury instruction given after the, you know, in response to a juror question. And then those cases involved arguments or maybe not giving arguments in cases where that instruction was given. Certainly, that's the case. Scalia. Could you move a little closer to the mic and speak up just a little bit? Thank you. In those cases, certainly isn't what happened here. There was no additional instruction given. And the other thing I would point out is to assignment of error number three, which is the enhancement of the sentence for levels for the tribal convictions. Again, I think my point was is clearly my client has a significant criminal history in trial in tribal court, but I don't know that it warrants. It's all the same thing, which is the domestic violence things. And obviously, there's a record of this sort of going back and forth between the victim in this case as well as the defendant. I don't know that it's warranted. The level of increase is warranted to the four levels. I think that that was excessive. But I don't really have anything else to add if the Court has questions. Did you find any cases that allowed re-argument after an Allen charge? I have not. And like I cited the D.C. case, I don't know that I can pronounce the name correctly. It's the case I rely on. That's the case with David Tatel's concurrence? Correct. He didn't find any, except in Arizona State Court, there is a rule that allows that to happen. And, of course, that's not binding on this Court. And I think that's the point that the concurrence makes in the D.C. case is that, you know, if we're going to start allowing this, that it needs to be something that the legislature considers and allows, like Rule 30. I mean, you could amend Rule 30 to allow that sort of thing. If I don't, if the Court doesn't have anything else to ask, I guess I would reserve the time for rebuttal. Let me make sure I understand the state of the record on this. There was no consent from the defendant to this procedure, right? Correct. In fact, he objected. It's on page 1019 of the transcript. And he made, for the record, he says, you know, I object to this arguing this. I believe they have all the evidence that they need. And I think he said it on several occasions. I mean, there are two aspects to the to this issue. One of them is asking the jury about their thinking. And the second one is having the subsequent argument on the point that they identified. And I just want to make sure what the state of the record was on as to either of these. Were there objections to both aspects? I — from how I read the record, I think defense counsel, when it was initially suggested by the court that they do this, I think he made the record clear that he didn't want to do that. He thought that the evidence had been submitted. The evidence was closed and there should be no more argument. I think that they went back and forth some. And, again, he objected to it. I don't know if he ever — But in the argument part, I got that part, but there was also a question posed to the jury, right? Yes. I — yes. What are you — what's the issue? What are you hung up on? Something like that. I think they brought the entire jury in. They asked the foreman, what are you hung up on? What issues can we help you with? They said there's two issues, the credibility and the witness. Was there an objection to the asking of that question? I think the — Counsel? Yes. I could not — I couldn't hear what you were saying. I don't know if the mic went off. I haven't said anything. He hadn't said anything, Judge Gould. Let me see if I can put this in. His lips were moving, but he was still thinking. See if I can put this in. It's actually very wise to think before answering any of these things. I agree. My understanding is the jury goes out. They're out for a time. They come back and they say they're deadlocked. Correct. The judge gives an Allen charge. Correct. They go back. They come back. They say they're still deadlocked. Correct. At this point, the judge says, well, I know there's some judges here in the courthouse who do allow re-argument, I guess is the overriding phrase describing this process. And we're in. We can inquire of the jury what it is that's hanging them up and then ask them if further instruction or further argument would help them. And I'd like to do that. Or I'd like to know what your position is on that. Have I framed this correctly? Is that essentially what happened? Yes. And the government said we'd love to do it, and the defense said absolutely not. Correct. Was there a need to object further? I don't think. I think that that should have ended the inquiry. You know, without the consent of the defendant on this, in my view, that's where this ends and you have to call it as a mistrial. So the objection was lodged before the inquiry was made. Correct. Okay. If I have anything, I'll reserve the rest of the time for rebuttal. Thank you. Okay. We'll hear from the government. Thank you. Good morning. May it please the Court. My name is Jennifer Green. I'm here with the United States Attorney's Office with the District of Arizona. Going straight to Argument 2, the supplemental closing argument, as the Court knows, it is the government's contention that the district court did not abuse its discretion in granting the 10-minute supplemental closing argument for each side. You understand there are two issues that are closely related, but nevertheless are two issues. One of them is asking the jury about its deliberations, and the second one is having the counsel argue about that. Yes, Your Honor. So I'd like to make sure you address both of those points. Okay. Because when you talk about discretion, discretion can only be exercised as to matters as to which the court has authority to exercise discretion. And I am not aware of any authority to ask the jury about what it is thinking. And Your Honor raises a good point. There are not reported decisions that have a factual situation similar to ours, other than arguably IENI, the case that this Court already discussed with my counsel. And I'm happy to discuss that in a little bit. But as to the Court's first concern about whether the judge has the authority to ask the jury about what it's stuck on, we would refer generally to what this Court and other circuit courts have said about granting trial courts very liberal discretion when jurors have stumbling blocks, they're allowed to do several things, one of which is to order supplemental instruction, as this Court knows, one is to order supplemental argument, one is to declare a mistrial. Any of the cases that authorizer discussed that involved a situation after an Allen charge? No, Your Honor. I simply we simply This is unique in that regard, isn't it? Absolutely. The examples that we were able to find where supplemental argument has been sanctioned, approved of, affirmed, have been after supplemental instruction. And those are cited in our brief. This is the process that Judge Snow used is a process that the Arizona State courts are familiar with. Very familiar with. And as the Court knows, they have a rule on point allowing that. And but it came as the result of studies and deliberations and the amendment of rules and eventually approval by the Supreme Court of Arizona, correct? Absolutely. Has anything like that occurred in the Federal system? Not that the government knows of. Of course, if we had found such a rule, we would have included in our brief. But on as to Chief Judge Kaczynski's concern about what the judge did by asking the jury about the about exactly what they were stuck on. I think one important distinction here, especially compared to the Iannie case, is the district court, when it asked the jury, what are you stuck on? It didn't begin with that inquiry. It started with this. If I were to allow argument on one of the issues, do you think it would assist you in your deliberations and possibly enable you to reach a verdict? And there was a colloquy back and forth between the district court I'm sorry. Why isn't that an inquiry about deliberations as well? You're asking them to tell you something about the state of the deliberations. If they answer the question, they have told you, well, we're not that far apart. We might be able to, you know. So I don't see how this is how this is not itself a question that asks, inquires about the jury's deliberative processes. You are the government respectfully disagrees that it asking about the substantive deliberations. The way the government views the court's inquiry was whether additional argument might be of assistance in finding a verdict. So the way that the court approached. But that can't be answered without, that couldn't be answered by anybody who was not part of the deliberations, and the answer would hinge on what they learned in the jury room. And don't we have a standard instruction? I mean, every jury trial I have ever, where I've charged a jury, I remember there was a standard instruction that says you are never to tell anybody, including the court, about the state of deliberations or how you're divided. Was that instruction given here? I assume it was. It's pretty standard. I don't have a record side off hand, but I assume it was a standard given in the standard closing instructions given at the very end of the case, Your Honor. Can I go back a bit to, and you conceded, I think, as you must, that there is no rule authorization for the process that Judge Snow engaged in. The contrary is actually true, isn't it? Wasn't there a committee appointed by the circuit, chaired by Judge Bolton in Phoenix, to address what part of the jury reform efforts in Arizona should be adopted in the Ninth Circuit? Are you familiar with that? I apologize. I'm not familiar at all with that committee, Your Honor. Well, I can tell you that one of the things they did not recommend was this. Okay. So where are we? Well, I think that I should, if we're to change the rules in the system about how we deal with jurors, why shouldn't this go through the rulemaking process of the Criminal Procedure Rules Committee of the U.S. Judicial Conference, and then rules proposed and then through Congress for their approval before something that is so dramatically different from the way trials are conducted in Federal court in this country is implemented? The government agrees with the court that if the time is appropriate to set forth a bright-line rule and when it is appropriate and when it is not, or that it is or isn't in a wholesale fashion approved of, that is the exact process that the court should embark on. However, in this case, in the United States v. Evanston, it's this Court's determination to determine whether the district court abused its discretion. Well, if the – when Judge Snow asked the question, the foreman of the jury had said, well, here's our problem. Jurors seven, eight and nine think the guy's not guilty, and the rest of us think he's guilty. Certainly, that would have changed the factual situation here because we know that the exact vote, who were the holdouts, that is not permitted to be divulged. And so that would have made a very different factual situation. Let's change it just a little bit. Suppose the foreman had stood up and said the majority of us are convinced that the defendant is not telling the truth and that he, in fact, caused the injuries to the victim. Sure, Your Honor. But there are some people in the jury who don't believe that, Your Honor. Pardon me for interrupting. No, that's okay. I think that even saying the majority of us is similar to saying seven, eight and nine are the holdouts or the guilty voters, whatever it is, to the government's view, those two are pretty similar. So how is that different from the foreman saying we've got a little bit of a problem with causation and witness credibility, which is what happened here? That's exactly right. And what happened here has not been specifically precluded by the case law. What happened here was Judge Snow's cautious inquiry to saying, would this be helpful? And the jury is saying yes. You'll note in the record that the heads nodded in unison. He asked the jury twice whether anyone disagreed with that, and nobody said anything. And then he didn't do the thing. But, boy, if they had answered that, we'd be in real trouble, right? Agreed. If juror 9 stands or raises his or her hand and says, oh, I don't agree with that. We're very thankful that didn't happen. You're exactly right. However... But isn't that exactly the risk you run when you start trying out the jury and start asking them questions? Certainly. Certainly that that is a we're in an area where the jury had deadlocked twice in writing. However, they had only been out 7 hours and 10 minutes, according to the minute entries here. So we had a four-day jury trial, and they've only deliberated yet. They haven't even deliberated a full day yet. So Judge Snow's options are really... They deliberated about a quarter of the time the trial lasted. That's about right, Your Honor. Including jury selection? Yes, Your Honor. So it sounds to me like it's more like a third of the time that they had to testify. I think that's fair. That's a huge amount. You ever been on a jury? I have not had the pleasure. You should try sometime. Counsel? Counsel, if I could interject. Question. Is there anything written in the Federal Judicial Center in their studies about whether this type of procedure can be used in discretion? I don't know about any studies that have been done, to answer your direct question, Your Honor. However, certain cases that have come up have certainly said, have authorized the trial court's discretion in this area, including, ironically, IENI, the D.C. Circuit case, who came out against us. Because, again, although I don't know any studies, Your Honor, the IENI case specifically said that, and again, that was a D.C. Circuit case that doesn't allow for the deadlock instruction, and they found that that, in that case specifically, that they couldn't ask for the split and you can't give the Allen charge, but at least in that case they said the trial court has the discretion to do certain things, and it didn't go as far as to say absolutely no supplemental closing argument. So under that case, although eventually it came out against us, there is some language in IENI to support the fact that this is one of the tools available to Judge Snow when the jury deadlocked and they'd been out such a short time. Counsel, you know that famous movie, Twelve Angry Men, with Henry Fonda? Yes, Your Honor. It's a jury movie. Like, do you think this kind of procedure could have changed the result in a hypothetical loan holdout case like that? If there was a loan holdout case like that, and I forgot how long in that case the jury was out, but if they had been out a long time, in a case where there might be examples of coercive, like if the judge was saying, we're going to do this, I'm going to give you supplemental or argument. But in this case, the judge didn't do that. He offered it to the jury and they accepted it. And the jury hadn't been out a very long time, although we may disagree with some members of the Court with that. And in that case, if they had been deliberating for three days and the jury trial only lasted four, it might appear to be coercive. So although I think I understand the Court's concern, I don't think those are the facts that we had here, given the amount of time that they were out and given the way that the district court posed the question to the jury. Okay, thanks. Okay, thank you. Thank you, Your Honor. The Government submits the remaining issues on the briefs. Your Honors, I don't think I have anything else to add. If there's any questions, I'll be happy to answer them. I'm trying to understand sort of your view as to the sort of two closely related issues, pulling the jury and having subsequent argument. What if the judge had said, well, the jury's been deliberating for a while, it looks like they're deadlocked, why don't we just have argument, you know, bring them out here and have the lawyers re-argue the case for 10 minutes each, and without any indication as to what they're thinking, what they're doing, just, you know, give it your best shot. Would that be objectionable? I think. I think the evidence is closed. I think that you've done what you unless there is some sort of, I see why argument is used during, you know, when additional instructions are given. But, you know. I understand. If you ask for additional instruction, you would have argument to argue about the effect of that instruction. I understand. But if the judge just says, I think it would be useful, it might be useful if the jury just adheres to the lawyers again. They've had a chance to think about it, no, no, no, we'll bring them out here. And since they don't seem to agree, we'll give the lawyers a chance to give both sides, you know, equal time. Well, I think it's objectionable. I certainly don't think it is as objectionable as when we start prying into the secrecy of the jury deliberations. Wasn't the jury asked before the Allen charge or maybe even after the Allen charge, is there anything that would help you reach a conclusion or are you hopelessly deadlocked? I don't. Something like that said? I believe so, but I don't remember off the top of my head. I know that all of this took place after the Allen charge. Okay. Okay, thank you. Case resolved, we'll stand for a minute.
judges: Kozinski, Hawkins, Gould